# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| AFP 104 CORP., | : |
| | : Civil Action No. 13-CV- 04077- |
| Plaintiff, | : PGS-LHG |
| | : |
| v. | : |
| | : **BRIEF IN SUPPORT OF** |
| COLUMBIA CASUALTY COMPANY, | : **DEFENDANT'S MOTION TO** |
| | : **DISMISS PLAINTIFF'S** |
| Defendant. | : **COMPLAINT FOR FAILURE** |
| | : **TO STATE A CLAIM** |
| | : |
| | : **MOTION DAY: AUGUST 5, 2013** |

Charles G. Carluccio, III
COLLIAU CARLUCCIO KEENER
MORROW PETERSON & PARSONS
1249 South River Road
Suite 300A
P.O. Box 2000
Cranbury, NJ  08512
T  (609) 395-5970
F  (609) 655-6604
*Counsel for Defendant,*
*Columbia Casualty Company*

## TABLE OF CONTENTS

I. SUMMARY ..................................................................................................1

II. BACKGROUND ..........................................................................................3

    A. The policy has a $1 million Named Storm deductible. .........................3

    B. AFP asserts that all of its alleged losses were "from Sandy." ..............5

III. ARGUMENTS AND AUTHORITIES .........................................................7

    A. Standard of Review. ..............................................................................7

    B. AFP's Complaint Should Be Dismissed Because Its Total Claimed Loss Does Not Exceed the Named Storm Deductible. ........................9

        1. Executive Order No. 107 Does Not Preclude Application of the Named Storm Deductible. ................................................9

        2. The Named Storm deductible applies to AFP's Service Interruption claim. ...............................................................11

            a. The Named Storm deductible applies to claims for Service Interruption resulting from physical damage to unowned property at locations other than the Resort .....12

            b. Time Element loss claims under the Service Interruption Coverage Extension are subject to the Named Storm deductible, as well as a 24-hour qualifying period.........13

            c. AFP's feigned ignorance about the cause of the power outage does not affect the application of the Named Storm deductible............................................................14

IV. CONCLUSION AND REQUEST FOR RELIEF .........................................16

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)..................................................................................7

*Benjamin Moore & Co. v. Aetna Cas. & Surety Co.*,
    179 N.J. 87 (2004) .......................................................................................8

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ........................................................................7

*Gresko v. Stewart Title Guar. Co., Inc.*,
    No. 08-cv-4251, 2009 WL 1010964 (D.N.J. April 15, 2009) ..............8, 15

*J. Josephson, Inc. v. Crum & Forster Ins. Co.*,
    293 N.J. Super. 170 (App. Div. 1996)......................................................14

*Lum v. Bank of Am.*,
    361 F.3d 217 (3d Cir. 2004) ........................................................................7

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ........................................................................7

*S.T. Hudson Eng'r, Inc. v. Penn. Nat'l Mut. Cas. Co.*,
    388 N.J. Super. 592 (App. Div. 2006),
    *cert. denied*, 917 A.2d 787 (N.J. 2007) ......................................................8

*U.S. Express Lines, Ltd. v. Higgins*,
    281 F.3d 383 (3d Cir. 2002) ........................................................................7

**OTHER AUTHORITIES**

Executive Order No. 107 ................................................................................ 9-11

Federal Rule of Civil Procedure 12(b)(6)........................................................1, 7

N.J. Admin. Code § 11:2-42.7(a)................................................................. 10-11

Columbia Casualty Company ("Columbia"), Defendant, files this brief in support of its Motion to Dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.     SUMMARY

This is an insurance coverage dispute arising from damage caused by Hurricane Sandy. Plaintiff AFP 104 Corp. ("AFP") alleges that it suffered $774,562.32 in both physical damage and time element loss at the Ocean Place Resort and Spa (the "Resort") as a result of Hurricane Sandy. The insurance policy issued by Columbia has a $1 million deductible for loss associated with a Named Storm – in this case Hurricane Sandy. Consequently, even taking AFP's allegations as true for purposes of this motion, all of AFP's claims should be dismissed because AFP's losses do not exceed the Named Storm deductible.

AFP contends that the Named Storm deductible does not apply for four reasons, but each of those can be resolved without resort to extrinsic facts:

First, AFP claims that Governor Christie's executive order bars application of the Named Storm deductible. By its terms, however, the executive order applies only to homeowners' insurance policies, and has no impact on commercial property policies, like the policy at issue here.

Second, AFP contends that the deductible does not apply to its Service Interruption claim because the damage that caused the service interruption

occurred at "places other than the Resort's location." The Service Interruption provision, however, specifically contemplates and addresses damage to "places other than the Resort's location" and specifies that the applicable deductible is the one that applies to the covered peril that caused the damage to that property. Because AFP alleges that Hurricane Sandy caused that damage, the Named Storm deductible applies.

Third, AFP incorrectly asserts that its Time Element losses are subject to a 24-hour deductible, not a set monetary amount. The plain language of the policy establishes that this claim similarly lacks merit.

Finally, AFP contends that the Named Storm deductible cannot apply because "it has not been established" what caused the power outage that is the basis of AFP's Service Interruption claim. But AFP itself alleges that Hurricane Sandy caused its loss and damage. As long as the damage that caused the service interruption resulted from Hurricane Sandy, then the Named Stormed deductible applies. More significantly, if AFP cannot establish what caused the damage to the unowned property, it cannot bring its Service Interruption claim within the basic terms of the policy's coverage. Under either scenario, AFP has failed to state a claim for which there is coverage.

Because AFP's complaint fails to state a claim upon which relief can be granted, Columbia requests that this Court dismiss the complaint in its entirety.

## II.    BACKGROUND

**A.    The policy has a $1 million Named Storm deductible.**

Columbia issued commercial property insurance policy no. 4025885185 to AFP.  The policy was effective from March 1, 2012 through February 1, 2013.  A true and correct copy of the policy is attached hereto as Exhibit A.[1]

The policy has a minimum Named Storm deductible of $1,000,000 per occurrence:

> **d.**    (1)  As respects loss or damage due to wind or hail associated with a **Named Storm** occurring at all **Locations**, except as may be further provided below, the deductible shall be SEE BELOW per **Occurrence**
>
> Three Percent (3%) for physical damage and Time Element combined [sic], subject to a minimum of $1,000,000 per occurrence.

Ex. A (Endorsement 7).

> The policy defines "**Named Storm**" as follows:
>
> A storm system that has been declared to be a named tropical storm or hurricane by the U.S. National Weather Service or other governmental authority including hurricane or tropical storm spawned tornado(s) or microburst(s). The named tropical storm or hurricane begins when the National Weather Service officially declares the storm system to be a named tropical storm or hurricane and ends when the National Weather Service officially declares the named tropical storm or hurricane permanently downgraded to a tropical depression.

---

[1] Although AFP's Complaint states that a copy of the policy is attached as Exhibit A, no exhibits were attached to the Complaint filed with the Superior Court of Monmouth County, nor were any attached to the Complaint served on Columbia.

3

*Id.* at 46.

In addition to coverage for physical damage, the policy also provides Service Interruption coverage where loss or damage at the Resort is caused by physical damage to unowned property caused by an insured peril, subject to the deductible applicable to the peril that caused the damage to the unowned property:

> **33.   SERVICE INTERRUPTION**
>
> This policy is extended to provide coverage when any direct physical loss or damage to unowned property described in paragraphs **a.** or **b.** below is caused directly by peril(s) insured against, (including covered **Equipment Breakdown** if applicable) and which, without the intervention of any other independent cause, results in a sequence of events which cause direct physical loss or damage to covered property at a covered **Location**, including loss caused by a change in temperature or humidity, and/or **Time Element** loss, as provided by this policy.
>
> **a.**   Property, not otherwise excluded, at covered **Locations** and within one thousand (1,000) feet thereof that is used by the Insured for: air conditioning; communications; cooling; heating; humidifying; lighting; refrigeration; or generation and/or conversion of power. This includes all associated transmission and distribution lines while on covered and within one thousand (1,000) feet thereof.
>
> **b.**   Property, not otherwise excluded, beyond one thousand (1,000) feet from covered **Locations** that provides the Insured services of: communications; electricity; fuel; gas; refrigeration; sewer; steam; or water to covered. This includes generating equipment, switching stations, substations, transformers, pumping and storage facilities, but excludes any associated transmission and distribution lines beyond the physical boundaries of the service providing facility.

4

(1) The physical damage deductible for this coverage *is the applicable deductible for the covered peril causing such physical loss or damage to such unowned property*.

(2) Coverage for any **Time Element** loss, as provided by this policy, for this coverage applies only if any of the above mentioned services are continuously affected, as described above, for more than the number of hours specified in Section **I.5.** Service Interruption Qualifying Period [24 hours].

In the event that the qualifying period has been satisfied, the Company shall then be liable for the amount of the **Time Element** loss until the resumption of **Normal** operations, *in excess of the applicable deductible for the covered peril causing such physical loss or damage to such unowned property*.

*Id.* at 24 (italics added for emphasis).

**B.  AFP asserts that all of its alleged losses were "from Sandy."**

AFP alleges that from October 28, 2012 through October 30, 2012 it suffered $106,917.16 in property damage and $667,645.16 in time element loss (for a total of $774,562.32) as a result of Hurricane Sandy. Ex. B (Complaint ¶¶ 18-19, 22). AFP specifically alleges that "Sandy caused widespread damage to property associated with the provision of electrical services" and that its "Resort suffered direct property damage and consequent Time Element loss from Sandy." *Id.* (¶¶ 18-19).

5

AFP concedes its damages do not exceed the $1 million Named Storm deductible, but argues that the Named Storm deductible does not apply, for four reasons:

- First, the Named Storm Deductible cannot and does not apply to AFP 104's claim, As noted above, that deductible applies to named storms including "hurricanes," and therefore is a "hurricane deductible." Insurance companies such as Columbia Casualty have been ordered by Governor Christie not to apply hurricane deductibles to the claims of policyholders in New Jersey:

    > In light of the National Weather Service's categorization of Sandy as a post-tropical storm, it shall be a violation of N.J.A.C. 11:2-42.7 for any insurer to apply a mandatory or optional hurricane deductible to the payment of claims for property damage attributable to Sandy.

- Second, the Named Storm Deductible does not apply to AFP 104's Service Interruption claim because that claim does not arise from "loss or damage due to wind or hail associated with a *Named Storm* occurring at all *Locations*," rather, the damage causing the service interruption occurred at places other than the Resort's location.

- Third, the Named Storm Deductible does not apply to the time element portion of AFP 104's Claim because the deductible for that portion of the claim is 24 hours—not a set money amount

- Fourth, it has not been established and is not clear what caused the actual power outage resulting in AFP 104's Service Interruption claim.

*Id.* (¶¶ 26-29).

Even taking AFP's allegations as true, none of AFP's four arguments withstand scrutiny of the executive order and the policy language.

6

## III. ARGUMENTS AND AUTHORITIES

### A. Standard of Review.

Under Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint, in whole or in part, is appropriate if the plaintiff fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss on the pleadings, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

In deciding a motion to dismiss, the court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a plaintiff's claim. *E.g.*, *Lum v. Bank of Am.*, 361 F.3d 217, 222 n. 3 (3d Cir. 2004); *see also U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383, 388 (3d Cir. 2002).

Under New Jersey law, in an insurance coverage dispute, the insured bears the burden of establishing that coverage exists under the policy. *See, e.g., Gresko v. Stewart Title Guar. Co., Inc.,* No. 08-cv-4251, 2009 WL 1010964, at *2-3 (D.N.J. April 15, 2009); *see also S.T. Hudson Eng'r, Inc. v. Penn. Nat'l Mut. Cas. Co.,* 388 N.J. Super. 592, 603-04 (App. Div. 2006), *cert. denied,* 917 A.2d 787 (N.J. 2007) ("Generally, the insured has the burden 'to bring the claim within the basic terms of the policy.'"). In determining whether the insured's claims fall within the basic terms of the policy, the words of the insurance policy are given their plain meaning. *Benjamin Moore & Co. v. Aetna Cas. & Surety Co.*, 179 N.J. 87, 102 (2004). AFP's complaint should be dismissed because it does not establish that AFP is entitled to coverage under the policy.

**B.     AFP's Complaint Should Be Dismissed Because Its Total Claimed Loss Does Not Exceed the Named Storm Deductible.**

There is no dispute that if the Named Storm deductible applies, AFP is not entitled to coverage because its losses do not exceed the deductible. Executive Order 107 does not preclude application of the Named Storm deductible and the plain language of the policy makes clear that the minimum Named Storm deductible of $1 million precludes recovery by AFP. Because AFP cannot establish that it is entitled to payment for its claim, its Complaint should be dismissed.

**1.     Executive Order No. 107 Does Not Preclude Application of the Named Storm Deductible.**

Executive Order No. 107, which precludes insurers from enforcing hurricane deductibles in homeowner's policies for Sandy-related claims, does not apply to Columbia's policy. The policy that Columbia issued to AFP is a commercial property insurance policy, not a homeowners' policy, and, therefore, is not subject to the Order. The Columbia policy also contains a "Named Storm" deductible, not a "hurricane" deductible. Accordingly, Governor Christie's Order, even if it was applicable to commercial policies, does not affect the application of the policy's Named Storm deductible.

9

On November 2, 2012, New Jersey Governor Chris Christie issued Executive Order No. 107. *See* Ex. C (Executive Order No. 107).[2] By its express terms, the Order applies only to homeowners' insurance, not commercial insurance policies like the policy that Columbia issued to AFP. Executive Order No. 107 is entitled "Protect Storm-Impacted **New Jersey Homeowners** from Higher Insurance Deductibles." (http://nj.gov/infobank/circular/eoindex.htm) (emphasis added). Additionally, the substance of the Order demonstrates that it applies only homeowners' insurance:

> In light of the National Weather Service's categorization of Sandy as a post-tropical storm, it shall be a violation of N.J.A.C. 11:2-42.7 for any insurer to apply a mandatory or optional hurricane deductible to the payment of claims for property damage attributable to Sandy.

*See* Ex. C. New Jersey Administrative Code 11:2-42.7 deals exclusively with homeowners' insurance. Section 11:2-42.7 identifies acceptable language for "hurricane deductibles" for homeowners' insurance only:

> The uniform policy language that shall be utilized for all mandatory and optional hurricane deductible programs for **homeowners' insurance** is as set forth in Exhibit D in the Appendix to this subchapter, incorporated herein by reference.

---

[2] AFP's Complaint states that a copy of Executive Order No. 107 is attached as Exhibit C. However, no exhibits were attached to the Complaint filed with the Superior Court of Monmouth County, nor were any attached to the Complaint served on Columbia.

10

N.J. Admin. Code § 11:2-42.7(a) (emphasis added).[3] The Order therefore does not, and was not intended to, address the application of Named Storm deductibles to commercial insurance.[4] The policy that Columbia issued to AFP is a commercial property insurance policy, not a homeowners' policy, and is therefore not subject to the Order. *See* Ex. C.

Additionally, Executive Order No. 107 prohibits the enforcement of "hurricane" deductibles. The deductible at issue in the Columbia policy is not a "hurricane" deductible, it is a "Named Storm" deductible. The Columbia policy does not use, nor is it required to use, the standard language required by the homeowners' regulations.[5]

### 2. The Named Storm deductible applies to AFP's Service Interruption claim.

The remainder of AFP's complaint focuses on the application of the Named Storm deductible to its claim for Service Interruption coverage. AFP misconstrues

---

[3] In fact, the entire subchapter 42, titled "Homeowners' Insurance; Standard Hurricane Deductibles and Expedited Process for Homeowners' Insurance Rate Changes," is limited to homeowners' insurance.

[4] In that regard, Governor Christie's order was consistent with similar orders or statements issued in the aftermath of Hurricane Sandy by the Governors of New York, Pennsylvania, Connecticut, and Maryland. Each asserted that hurricane deductibles would not apply to loss sustained <u>by homeowners</u>.

[5] Even if Executive Order 107 applied to the kind of policy at issue here, Columbia does not concede that the order was a valid exercise of governmental authority or that it is otherwise enforceable. Columbia is not, however, addressing that issue in this motion.

or ignores the plain language of the policy in an effort to avoid the application of the deductible to its Service Interruption claim.

### (a) The Named Storm deductible applies to claims for Service Interruption resulting from physical damage to unowned property at locations other than the Resort.

The plain language of the policy directs that the Named Storm deductible applies to AFP's Sandy-related service interruption claim. AFP seeks to avoid application of the deductible by alleging that the Named Storm deductible applies only to property damaged on the Resort's premises. However, this argument focuses on the language of the Named Storm deductible and completely ignores the language of the Service Interruption coverage extension. *See* Ex. B (Complaint ¶ 27) (quoting the Named Storm deductible endorsement).

The policy's Service Interruption coverage extension provides coverage when certain unowned property, whether located at the Resort, *or another location*, sustains direct physical loss or damage caused directly by a peril insured against, and without the intervention of any other independent cause, results in a sequence of events which cause direct physical loss or damage to covered property at a covered Location. The coverage extension then specifically states that the deductible to be applied to claims under this Service Interruption coverage extension is "the applicable deductible for the covered peril causing such physical loss or damage to such unowned property." *See* Ex. A at 24. By incorporating

12

deductibles based on the covered peril, the Service Interruption coverage extension demonstrates that the application of the Named Storm deductible is not limited to damage sustained at the Resort.

### (b) Time Element loss claims under the Service Interruption Coverage Extension are subject to the Named Storm deductible, as well as a 24-hour qualifying period.

AFP again conflates policy terms while arguing that the only deductible applicable to its time element loss is a 24-hour waiting period.[6] However, the 24-hour qualifying period is not a deductible, it is a condition precedent to coverage for time element losses under the Service Interruption coverage extension.

Time Element claims under the Service Interruption coverage extension are not triggered until service has been interrupted for 24 hours. This waiting period is not a deductible. The coverage extension provides that no coverage for Service Interruption is available unless the interruption lasts longer "than the number of hours specified in Section **I.5.** Service Interruption Qualifying Period," which is 24 hours. *Id.* The very next paragraph discusses what *deductible* is applicable to time element losses for service interruption. *Id.* As discussed above, the applicable deductible depends on what caused the physical loss or damage to unowned

---

[6] As an initial matter, although AFP does not mention Service Interruption in its third point – it instead refers only to the "time element portion" – it is clear that AFP is referring again to Service Interruption coverage. Its reference to a 24 hour "deductible" is really a reference to the qualifying period required by the Service Interruption coverage, as cited above.

property which resulted in the service interruption. *Id.* To accept AFP's argument that the 24-hour qualifying period is the deductible applicable to time element losses under the service interruption coverage extension renders Section C.33.b.(2) superfluous. Principles of contract interpretation require that all policy provisions be given effect. *See J. Josephson, Inc. v. Crum & Forster Ins. Co.*, 293 N.J. Super. 170, 216-17 (App. Div. 1996). Therefore, AFP's allegations again fail to state a claim upon which relief can be granted.

### (c) **AFP's feigned ignorance about the cause of the power outage does not affect the application of the Named Storm deductible.**

In a final effort to avoid the application of the Named Storm deductible, AFP contends that "it has not been established and is not clear what caused the actual power outage resulting in AFP 104's Service Interruption claim." Ex. B (Complaint ¶ 29). By that contention, AFP can mean only one of two things; either: (1) the exact source of the power outage (e.g., a downed power line or transformer) is unknown; or (2) AFP does not know if the service interruption was due to loss or physical damage to unowned property. Under either scenario, AFP's claims must be dismissed.

First, AFP alleges that "Sandy caused widespread damage to property associated with the provision of electrical services" and that all of its losses were "from Sandy." *See id.* (¶¶ 18-19). As explained above, a service interruption

14

claim, which resulted from physical damage to unowned property caused by wind or hail associated with Hurricane Sandy, is subject to the Named Storm deductible. Therefore, as long as the damage that caused the service interruption resulted from Hurricane Sandy, as AFP itself alleges, then the Named Stormed deductible applies.

More significantly, AFP cannot bring its Service Interruption claim within the basic terms of the policy while at the same time feigning a lack of knowledge about its cause. AFP has the burden to plead allegations sufficient to bring its claim within coverage. *See, e.g., Gresko*, 2009 WL 1010964, at *2-3. Service Interruption coverage is only available "when any *direct physical loss or damage to unowned property... is caused directly by peril(s) insured against*... and which, without the intervention of any other independent cause, results in a sequence of events which cause direct physical loss or damage to covered property...." *See* Ex. A at 24. Setting aside AFP's allegations that Hurricane Sandy caused its loss, if AFP is attempting to avoid the application of the deductible to its service interruption claim by alleging that it has no idea what caused the service interruption, then AFP has failed to bring its claim within coverage. AFP must prove that its service interruption was the result of direct physical loss or damage to unowned property **and** that that loss or damage was caused by a peril insured against. *See id.*

15

In short, AFP cannot allege both that its claim is covered because Hurricane Sandy caused its loss while at the same time allege that it does not know what caused its service interruption loss. Either its claim is subject to the Named Storm deductible, or AFP has failed to submit a claim within the scope of the coverage provided by the policy.

## IV.   CONCLUSION AND REQUEST FOR RELIEF

AFP has not, and cannot, allege a claim for which it is entitled to relief. AFP's damages were caused by Hurricane Sandy, triggering the $1 million Named Storm deductible. Because its losses totaled $774,562.32, they fell within the deductible and Columbia is not liable. AFP's attempts to avoid application of the Named Storm deductible by intentionally misconstruing Governor Christie's executive order and the plain language of the policy must fail. Columbia, therefore, asks the court to dismiss AFP's complaint in its entirety.

In short, AFP cannot allege both that its claim is covered because Hurricane Sandy caused its loss while at the same time allege that it does not know what caused its service interruption loss. Either its claim is subject to the Named Storm deductible, or AFP has failed to submit a claim within the scope of the coverage provided by the policy.

## IV.   CONCLUSION AND REQUEST FOR RELIEF

AFP has not, and cannot, allege a claim for which it is entitled to relief. AFP's damages were caused by Hurricane Sandy, triggering the $1 million Named Storm deductible. Because its losses totaled $774,562.32, they fell within the deductible and Columbia is not liable. AFP's attempts to avoid application of the Named Storm deductible by intentionally misconstruing Governor Christie's executive order and the plain language of the policy must fail. Columbia, therefore, asks the court to dismiss AFP's complaint in its entirety.

Dated: July 8, 2013                    Respectfully submitted,

                                              COLLIAU CARLUCCIO KEENER
                                              MORROW PETERSON & PARSONS


                                 By:    s/ Charles G. Carluccio, III
                                        Charles G. Carluccio, III
                                        1249 South River Road
                                        Suite 300A
                                        P.O. Box 2000
                                        Cranbury, NJ  08512
                                        T  (609) 395-5970
                                        F  (609) 655-6604
                                        *Counsel for Defendant,*
                                        *Columbia Casualty Company*