**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AFP 104 CORP., Plaintiff, v. COLUMBIA CASUALTY COMPANY, Defendant. | Civil Action No.: 13-4077 (PGS)(LHG) **Memorandum & Order** |

**SHERIDAN, U.S.D.J.**

Plaintiff insured, AFP 104 Corp. ("AFP"), brought this action against Defendant insurer, Columbia Casualty Company ("Columbia"), seeking coverage under a commercial insurance policy for alleged damages arising out of Hurricane Sandy. Presently before the Court is a motion (ECF No. 3) by Defendant to dismiss Plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff claims that Defendant wrongfully refused to pay for losses sustained to Plaintiff's insured property during Hurricane Sandy. Plaintiff seeks a declaratory judgment that the policy it procured from Columbia provides coverage for its losses, as well as damages against Defendant for breach of contract. Defendant moves to dismiss Plaintiff's action, and contends that AFP's losses do not exceed the policy's applicable deductible. Defendant's Brief in Support at 4.

Having considered the submissions of the parties, the Court decides the motion on the papers in accordance with Federal Rule of Civil Procedure 78. For the reasons outlined below, Plaintiff's motion to dismiss is denied.

**I.**

**The Policy** [1]

From March 1, 2013 through February 1, 2013, AFP was the "Named Insured" under a first-party property insurance policy issued by Columbia covering Ocean Place Resort and Spa located at One Ocean Boulevard in Long Branch, NJ (the "Resort"). *See* Policy No. 4025886185 (ECF No. 7, Ex. A).[2] The policy insured the Resort against "risks of physical loss or of damages to property", covering damaged property at replacement value. *Id.* at 16.

In addition to covering property damage, the policy further provided a number of "Time Element" coverages, including Business Interruption, Denial of Access by Civil Authority, Ingress-Egress and Service Interruption. *Id.* Business Interruption coverage was provided for "loss resulting from necessary interruption of business caused by direct physical loss of or damages to covered property", while Service Interruption coverage was extended to provide coverage to the insured when *unowned* property is damaged, triggering a sequence of events which directly damages a property covered under the policy. *Id.* at 20, 32.

The policy contains two relevant deductible provisions. The first provision sets forth a base deductible of $10,000, as follows:

---

1 In addressing a motion to dismiss under Rule 12(b)(6), the court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable" to the plaintiff. *Phillips v. County of Allegeheny*, 515 F.3d 224, 228 (3d Cir. 2008). Accordingly, the facts recited below are taken from Plaintiff's amended complaint unless otherwise indicated and do not represent this Court's factual findings.

2 Although AFP did not attach the referenced NWS reports to its Complaint, this Court may consider them on this motion. As both parties have acknowledged, in deciding a motion to dismiss, the Court may consider "the Complaint, exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents if the Plaintiff's claims are based on those documents." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998. F.2d 1192, 1196 (3d Cir. 1993).

> All claims for loss, damages or expense covered under this policy and arising out of or resulting from any one Occurrence shall be adjusted as one claim. Except as provided below, from the amount of each such adjusted loss the sum of $10,000 shall be deducted before the Company shall be liable for any loss, damages or expense covered.
>
> Except as provided below, in the event of any one Occurrence where one or more deductibles apply, the total to be deducted shall not exceed the largest deductible applicable.

*Id.* at 16. The second provision sets forth a Named Storm deductible of $1 million per occurrence, as follows:

> d. (1) As respect loss or damage due to wind or hail associated with a ***Named Storm*** occurring at all ***Locations***, exception as may be further provided below, the deductible shall be SEE BELOW *per* ***Occurrence***
>
> Three Percent (3%) for physical damage and Time Element combined (sic), subject to a minimum of $1,000,000 per occurrence.

*Id.* at 63. Notably, the policy defines a " Named Storm" as follows:

> A storm that has been declared to be a named tropical storm or hurricane by the U.S. National Weather Service or other government authority including hurricane or tropical storm spawned tornado(s) or microburst(s). The named tropical storm or hurricane and ends when the National Weather Service officially declares the named tropical storm or hurricane permanently downgraded to a tropical depression.

*Id.* at 54.

**Procedural History**

The National Weather Service ("NWS") routinely conducts service assessments to evaluate its performance after significant hydrometeorological, oceanographic, or geological events. In May 2013, experts from the NWS issued a comprehensive report summarizing and analyzing the events giving rise to present action. That report began as follows:

> On October 22-29, 2012, Hurricane/Post-Tropical Cyclone Sandy moved from the Caribbean to the U.S. Eastern Seaboard, ultimately making landfall near Brigantine, NJ, around 7:30 p.m. on October 29. The storm resulted in an

> enormous impact to life and property in both the Caribbean and continental United States. The National Hurricane Center's Tropical Cyclone Report estimated the death count from Hurricane Sandy at 147 direct deaths. Sandy damaged or destroyed at least 650,000 houses and left approximately 8.5 million customers without power during the storm and its aftermath. The effects of Sandy extended as far west as Wisconsin. This late season storm also generated blizzard conditions in western North Carolina and West Virginia, resulting in snowfall totals as high as 3 feet.
>
> Storm surge created some of the most devastating impacts, including flooding in New York City's subway tunnels, water overtopping runways at La Guardia and Kennedy airports, and damage to the New Jersey Transit System estimated at approximately $400 million.

NWS Service Assessment, Hurricane/Post-Tropical Cyclone Sandy, Preface at iv (May 2013) (internal reference omitted).[3]

In the aftermath of Hurricane Sandy, AFP submitted a claim to Columbia, seeking coverage under the policy for $774,562.32 in damages sustained in the storm. *See* Pl.'s Complaint at ¶¶ 18-19. AFP estimated[4] that the Resort sustained approximately $106,917.16 in direct property damage and $667,645.16 in Time Element losses and property damage related to an interruption of electrical services following the storm. *Id.*

In a letter dated January 29, 2013, Columbia denied coverage for AFP's claimed loss on the grounds that Plaintiff's total loss ($774,562.32) did not exceed the applicable Named Storm deductible of "[t]hree Percent (3%) for physical damage and Time Element combined (sic), subject to a minimum of $1,000,000 per occurrence." Certification of Paul E. Breene, Esq., Ex. 1 at 77 (ECF No. 7). The letter stated, "[y]our combined losses are less than your Named Storm Deductible and Columbia Casualty Company will not be making payments for your recent Hurricane Sandy damages." *Id.*

---

3 http://www.nws.noaa.gov/os/assessments/pdfs/Sandy13.pdf

4 As noted in Columbia's denial letter, dated January 29, 2013, AFP submitted estimates from Mark Milner of Groves & Power Catastrophe Specialists and Nicholas King of J. Smith Lanier & Company. *See* Certification of Paul E. Breene, Esq., Ex. 1 at 77 (ECF No. 7).

On May 6, 2013, AFP filed suit against Columbia in the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. 1852-13, "for declaratory judgment, breach of contract and other relief arising from Columbia Casualty's refusal to pay". Notice of Removal, ECF No. 1, Ex. A at 6. On July 1, 2013, Columbia properly removed[5] the case to this Court by invoking the Court's diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441. *Id*.

On July 8, 2013, Columbia filed the instant motion to dismiss AFP's complaint pursuant to Fed. R. Civ. P. 12(b)(6).

**II.**

Federal Rule of Civil Procedure 12(b)(6) provides that a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss on the pleadings, the court must "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F. 3d 223, 229 (3d Cir. 2010). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (U.S. 2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is not facially plausible unless it has factual content sufficient to allow a court to reasonably draw the inference that defendant is liable for the alleged misconduct. *Id*. The touchstone of this analysis "is whether the parties' well-plead allegations can sustain the causes of action alleged." *White v. Rick Bus Co*., 743 F. Supp. 2d 380, 384 n.6 (D.N.J. 2010). The Third Circuit summed it up thus:

[5] AFP is a Nevada corporation with its principal place of business in Long, Branch, New Jersey. Columbia is an Illinois corporation with its principal place of business in Chicago, Illinois. In that regard, the parties are diverse. Given that the amount in controversy exceeds $75,000, the Court is satisfied that Defendant's removal was proper. *See* 28 U.S.C. §§ 1332, 1441.

"stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (*quoting Twombly*, 127 U.S. at 1965) (internal quotations and citations omitted).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Iqbal*, 129 S. Ct. 1937, 1950 (U.S. 2009); *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir.1997). Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1949. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

**III.**

The complaint in this case alleges that Columbia breached its obligation under the policy to provide coverage for the losses sustained by AFP. Columbia argues that Plaintiff's claim should be dismissed because, pursuant to the plain language of the policy, AFP is not entitled to coverage. Specifically, Columbia contends that its application of the Named Storm deductible was proper in that "applying the plain language of the policy, Sandy became a Named Storm when it was declared a tropical storm, and it never ceased to be a Named Storm because…a downgrade to a tropical depression[] never occurred." Def.'s Reply at 2.

Plaintiff maintains that Defendants application of the Named Storm deductible was improper given that "the 'legal triggers'…[were] not been met for the Named Storm Deductible in the Columbia Casualty Policy." Pl.'s Opp. at 10. AFP argues that "the mere fact that the storm that caused AFP 104's property damage and may have caused its Time Element loss had a name is not enough to trigger the 'Named Storm Deductible' which would eviscerate AFP's otherwise-covered claim." Pl.'s Opp. at 7.

In this respect, both parties rely upon a reading of the policy to support their respective positions. "T]here is no dispute that if the Named Storm deductible applies, AFP is not entitled to coverage because its losses do no exceed the deductible." Def.'s Brief at 9. The only issue truly in dispute, as it pertains to this motion, is whether or not Defendants properly applied the Named Storm deductible to preclude recovery for Plaintiff's losses due to Sandy.

In a dispute over insurance coverage, a plaintiff bears the initial burden of establishing that coverage exists under the policy. *See, e.g., Reliance Ins. Co. v. Armstrong World Indus., Inc.*, 292 N.J. Super. 365, 377 (App. Div. 1996) (burden is on the insured "to bring the claim within the basic terms of the policy"). The purpose of the instant motion is to test the sufficiency of the complaint, and assess whether Plaintiff is entitled to offer evidence in support of their claim. *See Kost*, 1 F.3d at 183; *Twombly*, 550 U.S. at 563 n. 8. In order to prevent dismissal, the Court must determine that Plaintiff has alleged factual allegations sufficient to state plausible grounds for relief. Here, the plausibility requirement is satisfied if Plaintiff's pleadings are sufficient for the Court to draw the reasonable inference that the Named Storm deductible should not apply to bar recovery of AFP's claims for damaged caused by Sandy.

When viewing Plaintiff's complaint under these strictures, the Court finds that the allegations supporting AFP's claim are sufficient, where Plaintiff's complaint is based, in relevant part, on the following crucial allegations:

> Upon landfall in New Jersey, Sandy was characterized as a post-tropical storm. The Resort suffered direct property damage and consequent Time Element loss from Sandy…Columbia Casualty's position, that the AFP 104 loss is subject to the Named Storm Deductible, is wrong and is in breach of the Policy.[][T]he Named Storm Deductible cannot and does not apply to AFP 104's claim.

Pl.'s Complaint at ¶¶ 18, 19, 25, 26. AFP has easily met its burden of establishing coverage under the policy by offering evidence which, if true, demonstrates that Columbia's application of the Named Storm deductible to damages caused by Sandy was improper. Thus, Plaintiff has alleged a plausible claim for recovery.

Whereas this Court finds that Plaintiff has sufficiently alleged a facially plausible claim that AFP is entitled to coverage for its losses under the Policy,

IT IS this **26th** day of **February**, **2014**,

**ORDERED** that Defendant's motion to dismiss (ECF No. 3) is denied.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.